THE STATE OF MONTANA EX REL. WILLIS B. JONES, ET AL., RELATORS, *v.* DISTRICT COURT OF THE SEVENEENTH JUDICIAL DISTRICT OF THE STATE OF MONTANA, IN AND FOR THE COUNTY OF PHILLIPS AND THE HONORABLE THOMAS DIGNAN, PRESIDING JUDGE, RESPONDENTS.

No. 12130.
Submitted September 8, 1971.
Decided September 13, 1971.
488 P.2d 1141.

Clayton R. Herron (argued), Helena, for relators.

Grant & Cole, Donald D. Cole (argued), Malta, for respondents.

PER CURIAM:

This is an original proceeding brought by members of the State Fish and Game Commission and its Director, seeking an appropriate writ directed to the district court of the seventeenth judicial district sitting in Phillips County after that court had issued an order to show cause directing the relators to appear on September 15 to show cause why a writ of mandate should not issue compelling the conduct of applications, drawings, and other proceedings to be held in Malta concerned with special elk hunting permits.

Relator in the district court was Louie Perry, a resident of Malta. He sought a writ of mandate against the Commission and its Director to force the Commission to require all applicants for special elk permits in the South Phillips County area to be personally present in Malta to make application, to be personally present at a drawing for permits, and that the drawing be in Malta.

Section 26-104(15), R.C.M.1947, provides:

"(15) It shall have authority to fix seasons, bag limits, possession limits and season limits; to open or close, shorten or lengthen seasons on any species of game, bird, fish or furbearing animal as defined by section 26-201, and to declare areas open to the hunting of deer, antelope and elk by bow and arrow permit holders, and during times when only bow and arrows may be used, to hunt deer, antelope and elk in such areas; it is authorized to declare areas open to deer hunting where shotguns only may be used to hunt or kill deer;

and it is authorized to declare areas which may be open to special license holders only, and issue special licenses in a limited number when it shall determine, after proper investigation, that such a season is necessary to assure the maintenance of an adequate supply of game birds, fish or animals, or furbearing animals, or to declare such a special season and issue special licenses whenever game birds or animals or furbearing animals are causing damage to private property, or when written complaint of such damage has been filed with the state fish and game commission by the owner of such property, and in determining to whom such licenses shall be issued, it may, when more applications are received than the number of animals to be killed, award permits to those chosen under a drawing system; provided, however, that all drawings for elk permits shall be held in the city or town which has suitable accommodations for the persons who will attend the drawing nearest to the area to be hunted but in no case shall the drawing be held in a city or town more distant than the county seat nearest to the area to be hunted."

In April 1971 at a regular meeting, the Commission established seasons, limits, and regulations for 1971 deer elk, and bear seasons. In that order it was noted that area to be handled by "special elk permits" would have application instructions, drawing dates and drawing locations at a later date.

On August 16, 1971, the Commission established some eighteen special permit elk seasons throughout the state. Except for area descriptions, dates of season, and a few other details, they were all the same. The one here in contention established the dates as December 5 through December 26. It provided:

"A public drawing will be held commencing at 9:00 A.M. September 27, 1971, at the City Hall in Malta, Montana, to select from the list of eligible registrants, persons to whom one hundred (100) antlerless and fifty (50) either-sex elk permits will be issued.

"Registration for the public drawing will be held on Sep--

tember 25 and 26, 1971, between the hours of 8:00 A.M. and 5:00 P.M. (noon hour included) at the City Hall in Malta, Montana. Applicants appearing in person must posses and present their valid 1971 conservation and 1971 elk licenses.

"Applicants may either appear to register on September 25 or 26, 1971, or they may register by mail on cards provided by the Fish and Game Department. Cards are available from all Fish and Game offices, game wardens and license agents. Registration cards must be postmarked no later than September 19, 1971, to allow time to sort to the various drawings in the state. Cards must be filled in completely and must be legible to be entered in the drawing. Applicants need not be present at the drawing. Individuals may make only one application and may apply in only one hunting district. The special either-sex and antlerless elk permits will be mailed from Helena to applicants successful in the drawing." (Note— Another area contiguous provides another 75 permits.)

Thereafter, on August 30, Mr. Perry filed his petition in the district court in Phillips County seeking the writ heretofore mentioned. The district court issued an order to show cause requiring the relators here to appear on September 15, 1971.

Application by mail could only be made until September 19; the registration in Malta on September 25 and 26; and the drawing September 27. We note that only one application in one hunting district can be made. Thus, it is clear that time is of the essence and because of this and the public interest involved, the ordinary process of district court action and the right of appeal would not be adequate, this Court assumed jurisdiction.

Respondent district court answers this by saying, but—any shortage of time was caused by the Commission and the Commission does not have "clean hands" and was being devious. This is a bare assertion with no supporting facts alleged and does not create a fact dispute. Then too, this answer presupposes that the district court would rule against the

Commission. We do not make any such assumption but rather would conclude that the district court would rule correctly.

Our problem is simply to interpret the language of section 26-104(15). Relators contend that they comply. Relator below, Mr. Perry, contends that the words "a drawing system" and "drawing" mean that applicants cannot file by mail, that they must personally be present in Malta to apply and to attend the drawing. Mr. Perry was in fact a member of the House of Representatives and one of the sponsors of the law. He contended by way of affidavit that the intent of the legislature was to require personal attendance by all applicants. The affidavit gave two reasons: (1) The system would favor local residents in increasing their chances of success. (There will be an estimated 1500 to 2500 applications for 225 permits). (2) The system would aid the economy of Malta. ·

To reach the reasoning of Mr. Perry, he would have us rely on the history of conduct of past drawings as establishing the meaning. Then, too, in the 1971 Legislature a bill, H.B.117, was introduced which would have struck the words in section 26-104(15), R.C.M.1947, requiring the drawing be held in a city or town having suitable accommodations nearest the designated hunting area, and substituted therefor the language: "The procedures used for awarding the permits from the drawing system shall be determined by the state fish and game commission in its own discretion." This amendment did not pass.

Thus, Mr. Perry reasons that the words "drawing system" and "drawing" mean personal presence by applicants to apply, to attend the drawing, and although not said, presumably to have the permits issued.

On the other hand, the relator Commission argues the words mean nothing more than that the actual drawing of names should be held in Malta, which it intends to do. Mr. Perry would insert words in the statute that are not there. The words "* * * suitable accommodations for the persons who will attend the drawing * * *," the Commission argues, indicate permissive language and only require the *place* of drawing to be in

Malta. The legislature could easily had used words to clearly include the application process too, but it did not. We note parenthetically that perhaps constitutional problems would arise if ''special laws' 'as such were enacted.

Where the words of a statute have a definite and precise meaning, it is not permissible to conjecture, restrict or extend their meaning, but they should be read and understood according to the natural and most obvious import of the language. See Osterholm v. Boston & Montana C. C. & S. Min. Co., 40 Mont. 508, 107 P. 499; Sections 93-401-15, 93-401-16, R.C.M. 1947.

We find then that the Commission's procedures are lawful and within the meaning of section 26-104(15), R.C.M.1947. Accordingly since no action is required by the Commission, a writ by this Court is not necessary other than to order the proceedings in the district court dismissed.

It is so ordered.